NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0762n.06

No. 10-1573

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Nov 14, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| TRAVIS SANTELLE BURTON, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before: MOORE, GRIFFIN, and WHITE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Travis Santelle Burton

appeals the district court's application of a four-level sentencing enhancement under United States

Sentencing Guideline ("U.S.S.G." or "Guidelines") § 2K2.1(b)(6) (2009), for possession of a firearm

in connection with another felony. Burton argues that his sentence was procedurally unreasonable

because the government failed to demonstrate the existence of another felony—namely, that Burton

possessed marijuana for resale. Because the district court did not clearly err in finding that the

government sufficiently established Burton's intent to distribute marijuana, we **AFFIRM** the district

court's application of § 2K2.1(b)(6).

**I. BACKGROUND & PROCEDURE**

On July 19, 2009, officers received a 911 call stating that a man in possession of a gun was

standing near a white van outside of the Last Chance Bar in Benton Harbor, Michigan. Upon arrival,

the two responding officers encountered Burton, who exactly matched the description provided by the caller, leaning into the passenger side of the vehicle and making furtive hand gestures inside the van. When Burton turned to leave, the officers moved to apprehend him and ordered him to remove his hands from his pockets. Initially, Burton refused to comply. When Burton finally did remove his hands, the arresting officer saw him drop a package later determined to contain 14.5 grams of marijuana divided into ten smaller bags. Meanwhile, peering into the van, the other officer observed the butt of a pistol in plain view beneath the front passenger seat. After obtaining consent to search the vehicle, the officers seized the gun, which authorities later determined was a stolen, loaded .45 caliber semiautomatic pistol.

A federal grand jury returned a single-count indictment charging Burton with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On December 8, 2009, Burton pleaded guilty, but admitted only to constructive possession of the weapon. According to Burton, he never actually possessed the weapon, but "knew the gun was in the van, and [that he] had access to the van to get the gun if [he] wanted it" to settle a verbal altercation that he was having in the parking lot. R. 41 (Plea Hr'g Tr. at 174).

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). Applying U.S.S.G. § 2K2.1(a)(4)(A), the PSR recommended a base offense level of 20. Based on Burton's possession of the firearm in concert with individually packaged bags of marijuana, the report also recommended a four-level enhancement under § 2K2.1(b)(6). In a Sentencing Memorandum objecting to the four-level enhancement, Burton's counsel wrote: "Mr.

Burton indicates that he has no recollection of possession [sic] any marijuana on the night in question. He further indicates that he was unaware of any marijuana being present, and to the extent that any marijuana was found at the scene, it must have come from some other source." R. 32 (Def.'s Sent. Mem. at 3).

At the April 20, 2010 sentencing hearing, Burton's attorney presented three general assertions to rebut the government's charge of drug distribution:   1) that Burton had no knowledge of the marijuana; 2) that no one had actually seen Burton selling marijuana, accepting money, or engaging in other activity that would indicate drug trafficking; and 3) that Burton had constructively possessed the gun only to facilitate a verbal argument and not to assist in the sale of illegal drugs. In contrast, the government presented testimony from the arresting officer stating that Burton had intentionally dropped the marijuana just prior to arrest. Additionally, the officer testified that based on his training and experience with narcotics arrests, "usually the amount of marijuana packaged in that nature is for distribution and not personal use." R. 42 (Sent. Hr'g Tr. at 15). Finally, the officer testified that it was common for one selling marijuana also to possess a firearm. Moreover, contrary to Burton's version of events, the officer pointed to multiple witness statements supporting the view that Burton had actual, rather than constructive, possession of the firearm while at the bar that evening. On cross-examination, however, the officer admitted that he could not be certain that a person in possession of marijuana packaged in this manner was unquestionably selling it.

Over Burton's objection, the district court applied the four-level enhancement, determining Burton's total offense level to be 24, which, in conjunction with his criminal history category of V,

yielded a Guideline range of 92 to 115 months in prison. In justifying the enhancement, the judge

specifically found that the officers observed the drugs coming out of Burton's left pants pocket

"within reasonable proximity of [the] van," which was "close enough [to the gun] to trigger the

enhancement." *Id.* at 20. The district judge further explained, that despite the lack of eyewitness

testimony supporting Burton's sale of the drugs,

> [w]e have, beyond contest, the discovery of about 14 1/2 grams of marijuana, not a great quantity, but nonetheless separately packaged in 10 separate bags, which one would reasonably expect to be for purposes of resale, not for purposes of use. Is it a hundred percent? No, it's not a hundred percent, as the officer indicates in response to cross-examination. But that's not what's required at a sentencing hearing. The standard is preponderance of the evidence, and I do think the preponderance of the evidence supports all elements of that enhancement so that the four points here would be appropriate.

*Id.* at 20–21. The district court then imposed a sentence of 102 months of imprisonment. Burton

filed this timely appeal challenging the procedural reasonableness of that sentence.

## II. ANALYSIS

The Guidelines provide for a four-level enhancement "[i]f the defendant used or possessed

any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6).

According to the application notes, the "in connection with" element of § 2K2.1(b)(6) requires that

the firearm "facilitated, or had the potential of facilitating, another felony offense." *Id.* cmt. n.14(A).

For cases involving drug trafficking, however, § 2K2.1(b)(6) applies if the firearm is merely "found

in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . because the

presence of the firearm has the potential of facilitating another felony offense." *Id.* cmt. n.14(B)(ii).[1]

The government bears the burden of establishing the factual predicate for a sentencing enhancement

by a preponderance of the evidence. *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009).

Burton argues that the district court's application of the four-level enhancement under

§ 2K2.1(b)(6) for use or possession of a firearm in connection with another felony offense—here,

possession of marijuana with intent to distribute—was procedurally unreasonable. Burton has

admitted to at least constructively possessing the firearm, easily satisfying § 2K2.1(b)(6)'s firearm-

possession requirement. Thus, the sole issue on appeal is whether the government met its burden

of establishing that Burton had the intent to distribute the marijuana, thereby satisfying the factual

predicate for his engagement in "another felony offense."

At sentencing and in his objections to the PSR, Burton's theory for challenging the

sentencing enhancement rested on his assertion that he "[did] not have knowledge of this marijuana."

R. 42 (Sent. Hr'g Tr. at 5). Perhaps to bolster his claim on appeal, Burton has now presented a new

iteration of the facts surrounding his arrest, claiming instead that the marijuana was his and that the

individual bags roughly corresponded to his typical daily usage. Consistent with the facts that he

presented below, Burton also argues that he has "virtually no history of selling drugs," that there

were no witnesses to support the allegation that he was selling marijuana, and that the gun was

---

[1]"Another felony offense" is defined as "any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6) cmt. n.14(C).

intended only to facilitate a personal dispute. Appellant Br. at 10–12. Burton also cites as significant a candid discussion with another inmate in which Burton admitted his possession of the marijuana but never indicated any intent to sell it.

We review challenges to the procedural reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). When assessing procedural reasonableness, we "review the district court's factual findings for clear error, and accord 'due deference' to the district court's determination" that the facts warrant application of the § 2K2.1(b)(6) enhancement. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Thus, "[i]f the district court interprets the evidence in a manner consistent with the record, we are required to uphold its decision even if we would have reached the opposite conclusion." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *Anderson*, 470 U.S. at 573–74 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.")).[2]

---

[2]Although the facts regarding Burton's knowledge and possession of the marijuana are presented differently on appeal, Burton maintains, as he did below, that "there is no evidence to support a conclusion that it was Mr. Burton who packaged the marijuana or that he possessed it for resale," and that as a result, "the government did not carry its burden of establishing the propriety of the enhancement." Appellant Br. at 7. Because of the newly presented facts, the government initially argued that Burton's appeal should be subject to the even more deferential plain-error standard of review. At oral argument, however, the government conceded that in spite of the altered

To determine intent to distribute drugs, a court can look to a number of factors, including "the possession of quantities of drugs too large for personal use; the value of the drugs; the presence of drug distribution paraphernalia, including scales and packaging materials; the concurrent seizure of large amounts of currency; and the purity of the drugs." *United States v. Woods*, 26 F. App'x 448, 451 (6th Cir. 2001) (unpublished opinion) (citations omitted). Here, the district court recognized that the amount of marijuana was "not a great quantity," and appears to have made the intent determination based solely on the mode of packaging. *See* R. 42 (Sent. Hr'g Tr. at 20). This finding was supported by the officer's testimony indicating that individual bags of marijuana like the ones in Burton's possession are usually associated with drug trafficking.

Burton cites our unpublished opinion in *United States v. Woods* as support for his contention that the fact of individualized packaging alone is insufficient to support an inference of intent to distribute. In *Woods*, we reversed a district court's application of § 2K2.1(b)(6), concluding that the factors militating in favor of the defendant's intent to distribute—individualized packaging, the presence of a gun, and the defendant's arrest in a drug area—were "equally consistent with the *purchase* of marijuana as they [were] with the *distribution* of marijuana." 26 F. App'x at 451

---

factual presentation, Burton's overriding objection to the sufficiency of the government's evidence remains the same and therefore permits application of the "clearly erroneous" standard. In reviewing for clear error, however, we will not fault the district court for failing to account for a version of the facts Burton never presented at sentencing. We therefore base our review only on the evidence as it was presented to the district court and will not consider previously unasserted facts regarding Burton's personal use.

(emphasis added). Indeed, those same factors also served to support that defendant's testimony that the marijuana was for his own use rather than for resale. *Id.* at 450–52.

The pivotal fact in *Woods*, however, was that the defendant actually asserted that the marijuana was for his own use and presented testimony to support his allegation. Woods testified that he was a daily drug user, that he had purchased the 7.5 grams to make three "blunts" for his own use, that the drugs were individually packaged when he purchased them, and that he was on his way home from his dealer when police made the traffic stop. *Id.* at 450. In contrast, Burton never so much as suggested to the district court that he possessed the marijuana for his own use or that he had recently purchased the marijuana already packaged in that manner. Although the PSR did contain a paragraph supporting Burton's frequent marijuana use, there was no testimony or other evidence at sentencing to suggest that this particular package of ten bags of marijuana was purchased for that purpose. *Cf. United States v. Shipman*, 107 F. App'x 354, 356 n.2 (4th Cir. 2004) (unpublished opinion) (distinguishing *Woods* because Woods testified about his personal use), *vacated on* Booker *grounds*, 543 U.S. 1114 (2005). Instead, Burton's attorney stated only that Burton "does not have knowledge of this marijuana," and that he "didn't find any statements or evidence indicating that someone saw Mr. Burton selling marijuana or passing it to anyone or accepting money from anyone or anything like that which would be indicative usually of trafficking." R. 42 (Sent. Hr'g Tr. at 5–6). Thus, the district court was left to weigh Burton's rather incredible claim that he knew nothing of the marijuana's origins against the government's evidence indicating 1) that the marijuana had fallen from Burton's pocket just before his arrest and 2) that its mode of packaging and proximity to a

firearm generally supported the conclusion that Burton was likely engaged in drug trafficking at that time. Based on these facts and the lack of any credible contrary evidence, we cannot say that the district court clearly erred in concluding that it was more likely than not that Burton intended to distribute the marijuana.[3]

### III.  CONCLUSION

Because the district court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) was not procedurally unreasonable based on the evidence presented at sentencing, we **AFFIRM** the judgment of the district court.

---

[3]As an alternative basis for affirmance, the government argues that Burton's sentence can be upheld on the ground that Burton's simple possession also qualifies as "another felony offense" under § 2K2.1(b)(6). Because the government did not present this argument to the district court to permit factual findings on its merits and because we can properly uphold Burton's sentence on the basis of his intent to distribute the marijuana, we decline to address this possibility. *Cf. United States v. Richardson*, 510 F.3d 622, 628 (6th Cir. 2007).