NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0460n.06

Case No. 22-4013

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>DESHAWN GRAYSON,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Nov 02, 2023<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO<br><br>O P I N I O N</td></tr>
</table>

Before: WHITE, STRANCH, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** When a defendant who is convicted of illegally possessing a firearm also possesses that firearm "in connection with another felony," he faces a steep sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Deshawn Grayson challenges the district court's application of that enhancement, arguing that the link between his handgun possession and cocaine trafficking is too remote. We disagree. The court properly enhanced Grayson's sentence, so we AFFIRM.

## I.

Just after midnight on October 23, 2020, officers from the Cleveland Gang Impact Unit investigated an area receiving repeated complaints of drug activity. On patrol, they found a car parked illegally on the sidewalk and playing loud music. As officers approached, the front passenger dropped what looked like a firearm on the center console and fled. Grayson, who was

standing at the driver side door of the vehicle, instead reached toward the driver-side floorboard, shut the door, and slowly walked away before officers apprehended him without incident. The officers recovered a loaded pistol from the driver-side floorboard, as well as 27.46 grams of crack cocaine, 5.89 grams of powder cocaine, and another loaded pistol from the open center console. They then discovered Grayson's active warrant and placed him under arrest.

Grayson was later indicted for firearm possession by a felon under 18 U.S.C. § 922(g)(1). The case went to trial, and the jury convicted him. At sentencing, the parties disputed whether a four-level guidelines enhancement under U.S.S.G. § 2K2.1(b)(6)(B) should apply because Grayson possessed his firearm "in connection with another felony," namely drug trafficking. The trial court found that the enhancement applied because there was a sufficient nexus between the firearm and the drug felony, and there was too much crack and powder cocaine in the car for personal use. After applying the enhancement, the judge concluded that the sentencing range was 100 to 120 months incarceration. The court sentenced Grayson to 100 months followed by three years of supervised release. Grayson timely appealed, arguing that the district court erred by enhancing his sentence. He contends that "the government has failed to sufficiently prove the nexus" between the drugs on the center console and his firearm possession. Appellant Br. at 12.

## II.

"[W]e review a district court's sentencing determination, 'under a deferential abuse-of-discretion standard," for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, 'we review the district court's factual findings for clear error and accord "due deference" to the district court's determination that the firearm was . . .

possessed "in connection with"'" another felony. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (quoting *United States v. Taylor,* 648 F.3d 417, 432 (6th Cir. 2011)).

The Guidelines instruct judges to raise a defendant's offense level by four if he "used or possessed any firearm or ammunition in connection with another felony offense." § 2K2.1(b)(6)(B). If the other felony is drug trafficking, "the enhancement applies if the firearm was 'found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.'" *United States v. Shanklin*, 924 F.3d 905, 920 (6th Cir. 2019) (quoting § 2K2.1(b)(6)(B), cmt. 14(B)). And that close proximity, when a defendant "is engaged in drug trafficking," *United States v. McKenzie*, 410 F. App'x 943, 945 (6th Cir. 2011), "will suffice to justify the enhancement," *United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011) (quoting *Id.*).

Although we have no bright-line test for "proximity," our past cases inform our inquiry. We have found proximity in cases involving drug trafficking when the firearm was in the bedroom of a small home where "police found approximately 51 marijuana plants, digital scales, and literature about marijuana growing" in the defendant's home, *Shanklin*, 924 F.3d at 912 (quoting the Sent'g Hr'g Tr., p. 32), and when the loaded firearm and the drugs were on different floors of a home, *Taylor*, 648 F.3d at 432. Here, not only were Grayson's gun and the drugs in the same car, they were within arm's reach of each other.

Instead, Grayson claims he did not possess the crack and powder cocaine on the center console, arguing his firearm possession was thus not "in connection with another felony." Appellant Br. at 7. The district court emphasized that in this case, "there was a large amount of drugs not certainly for personal use." (R. 105, Sent'g Tr., p. 18, PageID 543.) Noting that "[p]roof of intent to distribute may be inferred from a number of factors, including the possession of quantities of drugs too large for personal use," *id.*, the court concluded that Grayson and his co-

defendant were trafficking drugs out of the car and that Grayson's possession of the firearm facilitated that felony. The court then overruled Grayson's objection to the enhancement.

Based on the court's finding, even if the drugs were not Grayson's, it doesn't affect the outcome. Section 2K2.1(b)(6)(B) only requires a "connection with another felony." Nothing in the Guideline's plain language says that the other felony must be mainly one's own. In other words, one defendant's illegal firearm possession can facilitate someone else's drug trafficking. *United States v. Huffman*, 461 F.3d 777, 786 (6th Cir. 2006) (finding such a "connection" when the defendant slept with a borrowed gun in a "dope house" operated by his roommates); *see also United States v. Huerta*, 994 F.3d 711, 714-15 (5th Cir. 2021) (connecting firearm possession to drug trafficking when the defendant's gun was found near companions' 81.6 grams of discarded methamphetamine and $9,658 in cash); *United States v. Gary*, No. 18-4578, 2022 WL 203739, at *2, *4 (4th Cir. Jan. 24, 2022) (doing the same when the defendant's firearm was found in the trunk of his car beside a passenger's "large amount" of marijuana).

The governing test is whether "there was a nexus between the firearm and the other felony offense that is more than coincidental." *Huffman*, 461 F.3d at 788. The government can establish that nexus when a defendant possesses a firearm in close proximity to a drug trafficking enterprise. *Id.* (affirming application of the enhancement where the district court found that the defendant "used the firearm in connection with running a drug house"). In *Huffman*, the court's application of the enhancement rested on several factual determinations. These included:

> (1) Huffman was living in a house used for the distribution of illegal drugs, (2) two rival drug lords supplied drugs to his house and were having a feud, (3) one of the dealers brought the assault rifle—later found with Huffman—to the house for protection, (4) Huffman armed himself with the gun and ammunition following the shooting reported in the 911 call, and (5) Huffman and a woman smoked crack cocaine following the shooting.

*Id.* at 786. In other words, numerous facts led the court to determine that a connection existed between Huffman's gun possession and the drug enterprise.

Here, the district court highlighted several facts justifying the enhancement. For instance, the court clarified that "Mr. Grayson was seen placing . . . his weapon on the driver's side floor" of the vehicle. (R. 105, Sent'g Tr., p. 11, PageID 536.) As the Government noted, officers recovered two firearms from the vehicle—one "in the center console right next to the bag of drugs" and a second with "[Grayson's] DNA . . . on the floorboard of the driver's side of the vehicle." (*Id.* at p. 12, PageID 537.) The person who dropped the car off for Grayson and his co-defendant to use testified that she didn't see a firearm in the center console of the car or a plastic bag containing drugs when she dropped the car off. (*Id.* at pp. 13-14, PageID 538-39). The record also contained an officer's testimony that Grayson stood inside, handled, and manipulated the car door. Here, the district court concluded that these facts, as well as the officers' presence at the site "for the purpose of [addressing] a lot of complaints for drug activity," justified application of the enhancement. (*Id.* at p. 18, PageID 543.) This analysis comports with *Huffman*.

Given the large quantity of crack and powder cocaine recovered next to Grayson's gun and the other facts highlighted at sentencing, the district court properly applied the four-level enhancement under § 2K2.1(b)(6)(B).

## III.

For the reasons set forth above, we AFFIRM Grayson's sentence.